# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# TALLAHASSEE DIVISION

JOHN MICHAEL FERENC,

    Plaintiff,

vs.                                           Case No. 4:10cv138-RH/WCS

STACEY HAYNES, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

    Defendants Ferguson, Haynes, and McNeil filed a motion to dismiss.  Doc. 40.  Plaintiff, who is *pro se*, was directed to file a response in opposition to the motion.  Doc. 41.  Plaintiff filed a response.  Doc. 45.  It is recommended that the motion to dismiss be granted.

**Allegations of the Amended Complaint, doc. 5**

    Plaintiff initiated this case in April, 2010, after he was released from the custody of the Department of Corrections.[1]  Doc. 1.  Plaintiff's amended complaint alleged that he was illegally held in prison too long and he seeks compensation for the time he continued to be incarcerated.  Doc. 5, p. 8.

---

[1] He was released on July 1, 2009.  Doc. 40, p. 1.

Plaintiff filed a memorandum in support of his complaint, accompanied by documents setting forth his efforts to challenge how the gain time was awarded and forfeited, and showing the details of the calculation of his sentence. Doc. 6. Since these documents are allegations in support of the complaint, they may be considered on this motion to dismiss without converting the motion to a motion for summary judgment.[2] Defendants rely upon these basic allegations in their motion to dismiss, citing doc. 6. See doc. 40.

The issues were summarized by the court on remand:

> From 1983 to 2009, Mr. Ferenc served five consecutive sentences in the Department of Corrections. *See* ECF No. 6-1 at 28-29 of 86. Mr. Ferenc alleges that he was held too long on the fourth sentence. That sentence was for a crime committed in 1977. *See* ECF No. 6-1 at 28 of 86. He served the sentence from 1990 until 2002. *See* ECF No. 6-1 at 25 of 86. He says this was longer than he should have served and that the reason for the discrepancy was the Department's application of gain-time-revocation standards that were in effect prior to 1976 and after 1983—but not in 1977 when Mr. Ferenc committed the crime.
>
> Prior to 1976, the Department credited basic gain time in a lump sum at the outset of a term in custody. The Department could revoke all or part of the gain time for various reasons including a violation of disciplinary rules. Because gain time for the entire term was credited in a lump sum at the outset, a rules violation at any time could result in the revocation of all the gain time. But in 1976, a new statute was adopted under which basic gain time was not credited in a lump sum at the outset; instead, it was credited "on a monthly basis, as earned." Fla. Stat. § 944.27(1) (1977). A violation thus could result in revocation of the gain time accrued only to

---

[2] *See* Brooks v. Blue Cross and Blue Shield of Florida, Inc., 116 F.3d 1364, 1368-69 (11th Cir. 1997), *citing* 5 Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 1356 at 590-92 (1969) (Wright & Miller) *see also* Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005); Maxcess, Inc. v. Lucent Technologies, Inc., 433 F.3d 1337, 1340 (11th Cir. 2005) ("a document outside the four corners of the complaint may still be considered if it is central to the plaintiff's claims and is undisputed in terms of authenticity."); SFM Holdings, Ltd. v. Banc of America Securities, LLC, 600 F.3d 1334, 1337 (11th Cir. 2010); McBride v. Sharpe, 25 F.3d 962, 969-970 (11th Cir.), *cert. denied* 513 U.S. 990 (1994).

> the time of the violation. The Department could also punish a defendant by revoking his right to earn gain time in the future—thus accomplishing the same result as a revocation of all gain time under the older, lump-sum approach—but the Department could do so only by following additional procedures that it did not follow in Mr. Ferenc's case. *See* Fla. Stat. § 944.28(3) (1977). A further statutory change in 1983 reverted to the pre-1976 approach on this issue.
>
> Mr. Ferenc's allegation is that the Department erroneously credited all his gain time for the 1977 crime as a lump sum when he started serving the sentence in 1990. Mr. Ferenc alleges that the Department later revoked all the gain time—including gain time that, if properly credited monthly, would not yet have accrued. Mr. Ferenc alleges that, had the Department properly followed the law on this as in effect in 1977, it would have revoked only the gain time accrued to the point of the violation, and he would later have received the post-violation gain time, shortening his time in custody.

Doc. 13, pp. 2-3.

Plaintiff has not explicitly alleged an ex post facto violation. Doc. 5, p. 8. He alleges deprivation of a right to petition the government for redress of grievances, deprivation of liberty without due process, denial of equal protection of the laws, and cruel and unusual punishment. *Id*. The due process claim, however, depends upon an underlying ex post facto claim and Defendants have addressed an ex post facto claim. Doc. 40, p. 17.

**Defendants' Motion to Dismiss, doc. 40**

Defendants Ferguson and Haynes assert that Plaintiff fails to state a cause of action against them and, alternatively, assert that they are entitled to qualified immunity. Doc. 40, p. 7. Defendant McNeil argues that there is no causal connection between the alleged violation and Defendant McNeil because he was not the Secretary at the time Plaintiff served his 1977 St. Johns County sentence. *Id.*, at 15. Defendants also maintain that Plaintiff's claim is barred by the statute of limitations, *res judicata,* and the

doctrine of laches. *Id.*, at 16-22.  Lastly, Defendants contend that Plaintiff's claim is foreclosed because he failed to timely exhaust his state court remedies and federal habeas relief within one year pursuant to the AEDPA. *Id.*, at 22-23.

**Standard of review of a motion to dismiss**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949, 173 L.Ed. 2d 868 (2009), *quoting* Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).[3]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949, *citing* Twombly, 550 at 556; *see also* Speaker v. U.S. Dept. of Health, 623 F.3d 1371, 1380 (11th Cir. 2010). "The plausibility standard" is not the same as a "probability requirement," and "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 556.  A complaint that "pleads facts that are 'merely consistent with' a defendant's liability," falls "short of the line between possibility and plausibility." Iqbal, 129 S.Ct. at 1949, *quoting* Twombly, 550 at 557.

The pleading standard is not heightened, but flexible, in line with Rule 8's command to simply give fair notice to the defendant of the plaintiff's claim and the grounds upon which it rests.  Swierkiewicz v. Sorema, 534 U.S. 506, 122 S.Ct. 992,

---

[3] The complaint's allegations must be accepted as true when ruling on a motion to dismiss, Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992), *cert. denied*, 113 S. Ct. 1586 (1993), and dismissal is not permissible because of "a judge's disbelief of a complaint's factual allegations." Twombly, 127 S.Ct. at 1965, *quoting* Neitzke v. Williams, 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989).

998, 152 L.Ed.2d 1 (2002) ("Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions."). *Pro se* complaints are held to less stringent standards than those drafted by an attorney. Wright v. Newsome, 795 F.2d 964, 967 (11th Cir. 1986), citing Haines v. Kerner, 404 U.S. 519, 520-521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972). Nevertheless, a complaint must provide sufficient notice of the claim and the grounds upon which it rests so that a "largely groundless claim" does not proceed through discovery and "take up the time of a number of other people . . . ." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 125 S.Ct. 1627, 161 L.Ed.2d 577 (2005), *quoted in* Twombly, 127 S.Ct. at 1966. A complaint does not need detailed factual allegations to survive a motion to dismiss, but it must provide the grounds for a plaintiff's entitlement to relief beyond mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action . . . ." Twombly, 127 S.Ct. at 1964-65.

> If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding. Moreover, claims lacking merit may be dealt with through summary judgment under Rule 56.

Swierkiewicz, 122 S.Ct. at 998-999.

In reviewing a motion to dismiss based on qualified immunity, the court must accept "the facts alleged in the complaint as true, drawing all reasonable inferences in the plaintiff's favor, and limiting [ ] review to the four corners of the complaint." St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002) (citations omitted), *quoted in* Keating v. City of Miami, 598 F.3d 753, 762 (11th Cir. 2010).

**Allegations of fact**

Plaintiff John Ferenc was incarcerated in the Florida Department of Corrections from October 4, 1983, until his release on July 1, 2009. Doc. 40, p. 1, citing doc. 6-1, pp. 28-29. Plaintiff had four separate convictions, two from Escambia County, one from St. Johns County, and one from Seminole County. *Id.* The prison sentences in the two 1983 Escambia County cases (83-1246 and 83-1204) were for 15 years and 10 years, imposed consecutively. *Id.* Those sentences were followed by a consecutive 15 year sentence for a 1977 St. Johns County case 77-274, which was followed by a 15 year sentence for a 1983 case in Seminole County, case 83-655. Doc. 40, p. 2; *see also* doc. 6-1, pp. 28-29. Plaintiff does not dispute the information as to his four convictions and total of 55 year sentences. Doc. 45, p. 1.

The sentence at issue in this case is the St. Johns County offense which Plaintiff committed on August 2, 1977. Doc. 40, p. 2.[4] Plaintiff served the St. Johns County sentence from September 20, 1990, through June 15, 2002. *Id.*, at 2; doc. 6-1, pp. 24, 28, 37, 59, and 79; doc. 5, p. 7.

Both Plaintiff and Defendants agree that gain time awards were governed by FLA. STAT. § 944.27 (1977), since the offense was committed in 1977. Doc. 40, pp. 3-4; doc. 6-1, p. 22. Under that statute, prisoners earned basic gain time on a progressive scale: five days per month for the first and second years of the sentence, ten days per month in the third and fourth years of the sentence, and fifteen days per month in the fifth and

---

[4] The offenses in both Escambia County cases and the Seminole County case were committed on March 2, 1983. Doc. 6-1, pp. 28-29. Sentence was imposed on the Escambia County cases on August 19, 1983, and in the Seminole County case on November 15, 1984. Doc. 6-1, pp. 28-29.

all succeeding years of the sentence (hereinafter 5-10-15 scale). Doc. 6-1, pp. 22, 24-25.

The amount of gain time that Plaintiff lost from the 1977 sentence is not entirely clear. An October 11, 1996, affidavit submitted by Defendant Ferguson in the state habeas proceedings set forth the gain time that was lost on the 1983 sentences, but did not show any gain time lost on case number 77-274, the sentence at issue here. Doc. 6-1, pp. 28-33. The supplemental affidavit of Defendant Kronenberger, doc. 6-1, pp. 34-38, calculating Plaintiff's sentence structure as of September 11, 1996, asserts that due to disciplinary action (presumably before that date), Plaintiff had 650 days of gain time forfeited from the sentence in case 77-274. *Id.*, at 35.

It appears from a memorandum from a Department official, however, that eventually Plaintiff had 3,325[5] days of gain time forfeited (added back to the sentence in case number 77-274) due to disciplinary reports. *Id.*, at p. 60-62. From September, 1990, through December, 1991, Plaintiff would have earned gain time at 5 days per month, or a total of 80 days, yet he forfeited 1140 days of gain time. *Id.*, p. 60. He had another bad year in 1998, losing another 1380 days. *Id.* Plaintiff has shown a plausible claim of injury, assuming his legal theory is correct.

**Analysis**

Plaintiff alleges that the Department "unlawfully awarded basic gain time in a lump sum at the beginning of the sentence instead of awarding it in increments throughout service of the sentence as authorized by § 944.27(1), Fla. Stat. (1977)."

---

[5] The number of "gain time days" lost due to bad behavior is 3,325, not 3,265 as summarized since the 60 days lost in 2001 were not counted. Doc. 6-1, pp. 60, 62.

Doc. 40, p. 3; *citing* doc. 5, pp. 5-7; doc. 6-1, p. 64.  Plaintiff contends that the Department then "forfeited more gain time than otherwise would have been available at the time of his disciplinary infractions."  Doc. 40, p. 3, *quoting* doc. 5, pp. 5-7; doc. 6-1, p. 64.

**Due process and the Ex Post Facto Clause**

"[A] public official is liable under § 1983 only 'if he *causes* the plaintiff to be subjected to deprivation of his constitutional rights.' " Baker v. McCollan, 443 U.S. 137, 142, 99 S.Ct. 2689, 2693, 61 L.Ed.2d 433 (1979) (emphasis by the Court, citation omitted) (Sheriff is not required by due process to investigate every claim of innocence or of mistaken identify of someone held in his jail pursuant to a valid arrest warrant).  Generally speaking, however, continued detention beyond a clearly established release date established by law is a deprivation of liberty without due process.  Douthit v. Jones, 619 F.2d 527, 532 (5th Cir. 1980) ("Detention of a prisoner thirty days beyond the expiration of his sentence in the absence of a facially valid court order or warrant constitutes a deprivation of due process."); Slone v. Herman, 983 F.2d 107, 110 (8th Cir. 1993) (refusal to release prisoner after a court order that he be released had become final); Davis v. Hall, 375 F.3d 703, 712-713 (8th Cir. 2004) (refusal to release prisoner after a court had ordered that he be released) (collecting cases from the Ninth, Seventh, Fourth, Fifth, Third, Eleventh Circuits).  *See also* Cannon v. Macon County, 1 F.3d 1558, 1562-1563 (11th Cir. 1993) (plainly mistaken identify of person arrested by the arresting officers, duty to inquire).  Negligent conduct, however, does not state a claim.  Cannon v. Macon County, 1 F.3d at 1563.  A showing of deliberate indifference to the prisoner's liberty interest is required.  *Id.*  The issue for a due process claim,

therefore, is whether Plaintiff was in fact improperly held under state law and, if so, whether it was due to the deliberate indifference of a Defendant.

The question of whether Plaintiff was held unlawfully depends upon whether the calculation of his release date violated the Ex Post Facto Clause. To violate the Ex Post Facto Clause, a new law must inflict "a greater punishment, than the law annexed to the crime, when committed." Lynce v. Mathis, 519 U.S. 433, 441, 117 S. Ct. 891, 895, 137 L. Ed. 2d 63 (1997), *quoting*, Calder v. Bull, 3 Dall. 386, 390, 1 L. Ed. 648 (1798). An ex post facto law must (1) "apply to events occurring before its enactment" and (2) "disadvantage the offender affected by it" by "altering the definition of criminal conduct or increasing the punishment for the crime." *Id.*, 519 U.S. at 441, 117 S. Ct. at 896, *quoting* Collins v. Youngblood, 497 U.S. 37, 50, 110 S. Ct. 2715, 2723, 111 L. Ed. 2d 30 (1990). The issue is "whether [the new law] produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." California Dep't of Corrections v. Morales, 514 U.S. 499, 509, 115 S. Ct. 1597, 1603, 131 L. Ed. 2d 588 (1995). Central to the ex post facto claim is whether Plaintiff's release date was correctly calculated.

Defendants argue that the issue of illegal detention is controlled by Knuck v. Wainwright, 759 F.2d 856 (11th Cir. 1985). Doc. 40, p. 7. The crime in Knuck was committed in 1975. 759 F.2d at 857. The gain time statute in 1975 provided:

> Gain time for good conduct; schedule of allowances; cumulative sentences to be treated as one sentence for purposes of allowing and forfeiting.-
>
> (1) The Director *shall grant* the following deductions for gain time from the sentences of every prisoner who has committed no infraction of the rules or regulations of the board or the division, or of the laws of the state, and who has

> performed in a faithful, diligent, industrious, orderly, and peaceful manner, the work, duties, and tasks assigned to him, to wit:
>
> Five (5) days per month off the first and second years of his sentence;
> Ten (10) days per month off the third and fourth years of his sentence; and
> Fifteen (15) days per month off the fifth and all succeeding years of his sentence;
>
> and *he shall be entitled to credit for a month as soon as he has served such time* as, when added to the deduction allowable, would equal a month.

FLA. STAT. § 944.27(1975) (emphasis added).

The emphasized language would seem to require that gain time awards be calculated month-to-month, rather in a lump sum, and this seems to have been made even clearer in 1976. "In 1976 the legislature added the words 'on a monthly basis, as earned' to Section 944.27, so that § 1 began: 'The [Department] shall grant the following deductions for gain time on a monthly basis as earned from the sentences of every prisoner. . . .' " Knuck, 759 F.2d at 858.

Until 1979, however, the Department of Corrections credited gain time as a lump sum deducted from the sentence when a prisoner entered the prison system. Knuck, 759 F.2d at 858.  In that year, the Department "determined that the lump sum method of calculation of gain time was in error because it made gain time dependent on the sentence imposed rather than on the number of days actually served by the inmate." *Id.* Using the new gain time calculation method, "Knuck did not receive approximately one year's worth of gain time that he would have gotten under the former method of calculation." Knuck v. Wainwright, 759 F.2d at 858. The court held that the Department's recalculation of gain time on a monthly basis violated the ex post facto clause of the United States Constitution because it was disadvantageous to Knuck. The court reasoned that the law prior to the 1976 amendments was ambiguous, and

commented that the legislature "may have recognized the ambiguity of the statute because it amended" it in 1976 "to indicate that the gain time should be awarded 'on a monthly basis as earned.' " *Id.*, at 858-859.  This comment implies (but does not decide) that after the 1976 amendments, the Department would have been justified in awarding gain time on a monthly basis rather than in a lump sum.

Plaintiff's offense occurred in 1977, after the 1976 amendments to the gain time statute.  Knuck could have been read by the Department as authorizing, and perhaps requiring, continued awards of lump sum gain time, despite the 1976 amendments.  It also could be read for the opposite view, given the comment about the 1976 clarification.

Nine years after Knuck, while Plaintiff was serving his 1977 sentence, the Florida First District Court of Appeal considered the flip side of this kind of claim (which is also the same as claimed by Plaintiff in the case at bar).  Avera v. Barton, 632 So. 2d 167 (Fla. 1st DCA 1994).  After Avera escaped from prison in 1981, the Department forfeited all basic gain time as required by FLA. STAT. § 944.28, but did so based on gain time awards made pursuant to the 1983 version of § 944.275.  632 So. 2d at 168.  Avera argued that because the 1983 statute awarded him a more generous amount of gain time than he would have received under the 1981 statute, more gaintime was forfeited and, thus, the increased forfeiture was an ex post facto violation.  *Id.*  The court agreed, finding that if the 1981 statute calculations had been used, Avera would have forfeited

only 96 days of gain time instead of the 277 days that was forfeited using the 1983 statute.[6]  *Id.*, 168-169.

Similarly, in the case of Burks v. McNeil, 984 So. 2d 619, 620 (Fla. 1st DCA, 2008), Burks lost all of his gain time when his parole was revoked.  The court held that the Department of Corrections' calculation of Burks's sentence violated the ex post facto clause "when it applied the 1983 version of section 944.275, Florida Statutes, to his offense committed in 1981."  The court found that the Department used a retroactive statute which provided a "more generous gain-time" award to Burks as a lump sum award, which then resulted in a greater penalty to Burks when his parole was later revoked.  984 So. 2d at 620.  In reaching that decision, the court relied on Avera, which it found to be "directly on point."  *Id.*, at 620.

In Morton v. Florida Dept. of Corrections, 957 So. 2d 667, 668 (Fla. 1st DCA 2007), the Department of Corrections forfeited 18 years of basic gain time following revocation of parole.  The prisoner argued that "basic gain-time could not be awarded and forfeited in a lump sum on his consecutive sentences under the gain time statute in effect when he committed his offenses."  957 So. 2d at 668.[7]  The court agreed, stating

---

[6] Under 1978 amendments to the gain time statute, the 5-10-15 scale was reduced to a 3-6-9 scale.  Doc. 40, p. 9.  In 1983, the legislature amended the statute "to provide a flat rate of 10 days per month for the length of sentence." *Id.*  The 1983 change provided a greater benefit to an inmate who was released early after accumulating such credits, but was detrimental in the event gain time was forfeited.

[7] As established in Orosz v. Singletary, 693 So. 2d 538, 539-40 (Fla. 1997), concurrent sentences could be combined and counted as a single sentence in awarding or forfeiting gain time, but consecutive sentences count not permitted to be so counted when sentences were imposed for offenses committed between July 1, 1978, and June 15,1983, based on statutory amendments during that time period.  *See* Orosz, 693 So. 2d at 540, n.1.

that "[u]nder the gain-time statute in effect at the time of petitioner's offenses, the Department had to treat petitioner's consecutive sentences individually and could only award basic gain-time when petitioner began serving each of those sentences." Morton, 957 So. 2d at 669.

While the 1977 version of § 944.27 (which established the 5-10-15 scale) was not involved in these cases, the legal theories presented and principles established as to the ex post facto clause are applicable.  Those cases provide guidance in reviewing the retroactive application of statutes to gain time forfeitures to determine if doing so worked to the detriment of the prisoner.

There is a reasonable argument that Plaintiff *should* have had gain time provided to him on a monthly basis rather than as a lump sum award pursuant to the 1977 version of § 944.27, and the statute itself says as much.  FLA. STAT. § 944.27(1) (1977). After enunciating the 5-10-15 progressive scale, which was to be granted "on a monthly basis, as earned," the statute provided that a prisoner is entitled to such gain time "credit for a month as soon as the prisoner has served such time as, when added to the deduction allowable, would equal a month."  § 944.27(1) (1977).  That implies that it is improper to award gain time in a lump sum consisting of all future months, before a prisoner has served the time.

But it is still not clear whether for an offense committed in 1977, the Department was plainly precluded from awarding gain time in a lump sum.  Knuck did not mandate that the Department of Corrections award gain time in monthly amounts.  Indeed, albeit construing the 1975 statute, the holding was the opposite.  Avera supports the proposition that the amount of gain time forfeited could be no more than was earned

prior to the prisoner's escape, but the case does not address in any meaningful fashion whether gain time awards for a 1977 offense may be by lump sum or must be by monthly distribution.  Instead, the issue was whether the 3-6-9 progressive scale from the 1981 statute should have been used or the flat 10-day per month gain time distribution as provided for in the 1983 statute.  Likewise, Morton only held that the Department may only award basic gain-time when petitioner began serving each of those sentences.  Morton did not say that the award thereafter had to be on a month by month basis.

To succeed on a due process claim, Plaintiff must allege that a particular Defendant was deliberately indifferent to his right to be released from custody at some earlier date.  One cannot be deliberately indifferent to another person's constitutional right if the claimant cannot show that the contours of that right were clearly established.  Plaintiff has not done that here because there is no ex post facto case directly on point clearly establishing Plaintiff's liberty interest to earlier release.  This case is not like Cannon v. Macon County (plainly mistaken identify of person arrested by the arresting officers, duty to inquire), Douthit v. Jones (prisoner held beyond clear expiration of sentence), or the cases discussed above, where a court had clearly ordered that the prisoner be immediately released.  Given the lack of clarity of the law governing the ex post facto claim, the due process claim must fail.

Plaintiff has not alleged a violation of his right to petition for redress of grievances.  He pursued his claims in state court and he has not been impeded in pursuit of his claims in this court.  Plaintiff has likewise not alleged a claim of denial of equal protection.  He has failed to allege that similarly situated prisoners were treated

differently. For these reasons, the motion to dismiss the complaint against Defendants should be granted because the complaint fails to state a claim upon which relief may be granted.

Alternatively, Defendants have shown that they have qualified immunity from an award of damages in their individual capacities. Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), *cited in* Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2080 (2011). *See* Ensley v. Soper, 142 F.3d 1402, 1406 (11th Cir. 1998) (stating that "[a]ny case law that a plaintiff relies upon to show that a government official has violated a clearly established right must pre-date the officer's alleged improper conduct, involve materially similar facts, and 'truly compel' the conclusion that the plaintiff had a right under federal law."). For the reasons discussed above, Plaintiff has not alleged a clearly established statutory or constitutional right to earlier release.

Plaintiff cannot obtain money damages from Defendants in their official capacity due to the Eleventh Amendment.[8] Plaintiff did not request injunctive relief in this case, nor would Plaintiff be entitled to such relief because Plaintiff is no longer in the Department's custody.

---

[8] Absent three limited exceptions not applicable here, the State of Florida and its agencies are immune from suit in this Court by force of the Eleventh Amendment. Carr v. City of Florence, Alabama, 916 F.2d 1521, 1524 (11th Cir. 1990).

Case No. 4:10cv138-RH/WCS

Since the complaint should be dismissed for these reasons, there is no need to explore the more difficult questions of whether a post-release § 1983 claim challenging a period of detention is precluded by Heck v. Humphrey, 512 U.S. 477, 114 S.Ct. 2364, 2372, 129 L.Ed.2d 383 (1994), or whether the AEDPA limitations period, 28 U.S.C. § 2244(d), bars this claim.

**Conclusion**

Accordingly, it is **RECOMMENDED** that Defendants' motion to dismiss, doc. 40, be **GRANTED** for failure to state a claim upon which relief may be granted, and because Defendants have qualified and Eleventh Amendment immunity, and that Plaintiff's amended complaint, doc. 5, be **DISMISSED with prejudice**.

**IN CHAMBERS** at Tallahassee, Florida, on January 31, 2012.


 S/     William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


**NOTICE TO THE PARTIES**

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 14 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**